UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00058-H

THE NETHERLANDS INSURANCE
COMPANY                                                                                                        PLAINTIFF

V.

GEORGE O. BROCK                                                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This dispute concerns the narrow issue of whether an underinsured motorist ("UIM") insurer complied with the mandates in Kentucky Insurance Code, KRS § 304.39-320 so as to preserve its subrogation rights against the tortfeasor's liability carrier. Specifically at issue is whether Plaintiff Netherlands Insurance Company's ("Netherlands") payment to Defendant George O. Brock pursuant to KRS § 304.39-320(4) was timely under the statute. Netherlands seeks declaratory relief under 28 U.S.C. § 2201(a) on the grounds that it fully complied with the mandatory requirements of KRS § 304.39-320(4). If Netherlands did comply with KRS § 304.39-320, it argues that Brock's execution of a release in favor of the tortfeasor's insurance carrier was unlawful, thus precluding Brock from seeking UIM benefits. Brock has moved for partial summary judgment on Netherlands' claim and filed a counterclaim against Netherlands seeking judgement for uninsured benefits. Netherlands has filed a cross motion for summary judgment on its claim and Brock's counterclaim.

Because the Court will deny Netherlands' motion for summary judgment and grant Brock's motion for partial summary judgment on Netherlands' claim, Brock's counterclaim remains.

I.

On May 12, 2009, Defendant Brock, while operating a car owned by his employer, Bullit County Board of Education (the "Board"), sustained personal injuries in a motor vehicle accident caused by negligent driver Robert Dale Hall. Hall maintained insurance with the Kentucky Farm Bureau ("Farm Bureau") for any liability arising from his own negligence in the operation of a vehicle, with a policy limit of $25,000. Plaintiff Netherlands is an insurance company who issued a policy of UIM benefits to the Board. In part, the insurance policy provides for payment to its insurer in the situation where the insurer is in an accident with someone who's found at fault but has insufficient insurance to fully compensate the injured party. At the time of the accident, Brock was operating the vehicle with permission of the Board. As such, he is potentially covered under the insurance policy Netherlands issued to the Board.

On February 12, 2011, Farm Bureau Claims Adjuster Jeremy Russel sent a letter to Brock's attorney, Anne McAfee offering to settle Brock's personal injury claim on behalf of his client for the full policy limit of $25,000. On March 14, 2011, McAfee sent a certified letter to Netherlands detailing the proposed settlement between Brock and Hall's insurer, Farm Bureau. A Netherlands' agent received the letter on March 15, 2011. The letter advised Netherlands of its option, per KRS § 304.39-320[1], to retain subrogation rights against the underinsured carrier, Farm Bureau, and its

---

[1]KRS 304.39-320 provides in part:

> (3) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of thirty (30) days to consent to the settlement or retention of subrogation rights. An injured person, or in the case of death, the personal representative, may agree to settle a claim with a liability insurer and its insured for less than the underinsured motorist's full liability policy limits. If an underinsured motorist insurer consents to settlement or fails to respond as required by

2

insured Hall, by tendering payment to Brock within thirty days the $25,000 settlement offer from Farm Bureau.

On April 14, 2011, the thirtieth day following receipt of the proposed settlement agreement between Brock and Farm Bureau, Netherlands agent Amber Hale notified McAfee via telephone of Netherlands' intention to preserve its subrogation right. Pursuant to statutory requirements, Netherlands would tender payment of $25,000, the amount offered by Farm Bureau to settle Brock's personal injury claim. Hale followed with a facsimile that same day, again stating Netherlands' intention to pay Brock the $25,000 to preserve its subrogation rights against the underinsured Hall and his carrier Farm Bureau. She then mailed overnight a check payable to Brock and McAfee in the amount of $25,000 dated April 14, 2011. McAfee received the check on April 15, 2011.

On May 2, 2011, Hale sent a letter to McAfee inquiring into the status of the matter. Two days later, McAfee sent a letter back acknowledging receipt of the check on April 15, 2011. She then contended Netherlands lost its right to subrogation because of its failure to pay Brock within thirty days after notice of the proposed settlement, as required by KRS § 304.39-320(4). Brock then proceeded to finalize the proposed settlement between himself and Farm Bureau. In consideration

---

subsection (4) of this section to the settlement request within the thirty (30) day period, the injured party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.

(4) If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing to consent to settle, the underinsured motorist insurer must, within thirty (30) days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the liability insurer to the extent of its limits of liability insurance, and the underinsured motorist for the amounts paid to the injured party.

3

of Farm Bureau's $25,000 payment, Brock executed a full release of Farm Bureau and its insured, Hall, pursuant to KRS 304.39-320(3), thereby extinguishing Netherlands' subrogation right. Since that time, Brock has contacted Netherlands seeking payment for UIM benefits under the insurance contract Netherlands issued to the Board.    Netherlands filed suit seeking a declaration of rights that it, as a matter of law, complied with KRS § 304.39-320(4) and Brock's act of executing a full release in favor of Farm Bureau and its insured, Hall, bars Brock from seeking or collecting any UIM benefits from Netherlands. Brock filed a counterclaim for UIM benefits against Netherlands, claiming that the release of Farm Bureau and its insured, Hall, was in fact lawful since Netherlands failed to preserve its statutory subrogation rights. Brock has moved for partial summary judgment on Netherlands' claim. Netherlands has moved for summary judgment on all claims. If the Court granted Netherlands' motion for summary judgment and denied Brock's motion for partial summary judgment, Brock's counterclaim would be rendered moot. For the reasons that follow, the Court will deny Netherlands' motion for summary judgment and grant Brock's motion for partial summary judgment. Accordingly, Brock's counterclaim remains.

II.

The issue before the Court is one of statutory interpretation under Kentucky state law. No state court has considered the particular question at issue. For the reasons that follow, however, the Court feels confident in predicting how state courts would rule.

The specific issue is whether Netherlands complied with the mandatory statutory requirements in KRS § 304.39-320 so as to preserve its right to subrogation. Under general principles of statutory construction, a court may not interpret a statute at variance with its stated language. *Beverage Warehouse, Inc. v. Com. Dept. of Alcoholic Beverage Control,* 2011 WL

5105338, *4 (Ky. App. 2011)(internal citation omitted). "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002).

In Kentucky, UIM coverage is typically available as optional insurance in an automobile insurance policy. UIM insurance provides coverage when the driver at fault for an accident does not have sufficient insurance to fully compensate the injured party's losses. In Kentucky, the Motor Vehicle Reparations Act sets forth procedural mandates the respective parties must follow in order to have UIM coverage. The statute not only safeguards the injured party's right to be fully compensated for damages resulting from the accident but also the rights of the insurance company that is being asked to pay UIM benefits.

To recover UIM benefits from the insurer, Kentucky law directs the injured to provide the UIM insurer notice, by certified or registered mail, of his intent to settle the personal injury claim with the third-party tortfeasor before the claim is settled. This preserves the UIM carrier's subrogation rights by not releasing the tortfeasor and its insurer. The statute at issue provides the UIM insurer with "thirty (30) days to consent to the settlement or retention of subrogation rights." KRS § 304.39-320(3). "If an underinsured motorist chooses to preserve its subrogation rights by refusing to consent to settle, the underinsured motorist must, within thirty (30) days after receipt of the notice of the proposed settlement, pay the insured party the amount of the written offer from the underinsured motorist's liability insurer." *Id*. at (4).

In sum, for an UIM insurer to preserve its subrogation rights against the tortfeasor, it must both notify the injured of its intention to retain subrogation rights and pay the injured the settlement offer amount within thirty days. Pursuant to KRS § 304.39-320(3), if the UIM insurer consents to

settlement or fails to respond in the statutorily proscribed way, the injured party may proceed to finalize the settlement with the insured and execute a full release in favor of the underinsured, without prejudice to any remaining UIM claim. If the injured releases the wrongdoer, the release by operation of law will ordinarily destroy the UIM insurer's right of subrogation.

Netherlands argues it fully complied with the mandates of KRS § 304.39-320 because it timely advised Brock's counsel orally and in writing that it had elected to preserve its statutory subrogation rights against Hall and issued a check in the amount of the settlement offer within the statutory time frame. Specifically, Netherlands argues it timely paid Brock because the check was issued and mailed out on April 14, the thirtieth day following notice of the proposed settlement. Accordingly, Netherlands asserts it properly preserved its subrogation rights pursuant to KRS § 304.39-320. In addition, Netherlands contends that Brock's claim against it for UIM benefits is extinguished because Brock's execution of the full release of Netherlands' subrogation rights against Farm Bureau and its insured, Hall, was unlawful.

Brock argues that Netherlands failed to comply with the thirty-day time limit set forth in KRS § 304.39-320(4) because the check was received by his counsel on the thirty-first day following notice of the proposed settlement. Accordingly, Netherlands lost its subrogation right. Pursuant to the statute, Brock then had the right to execute a full release of the tortfeasor and his insurer and maintain the right to be paid UIM benefits under Netherlands' policy.

A recent Kentucky Court of Appeals case has addressed the statute at issue, though not quite our particular and unusual circumstances. *See Davis v. USAA Cas. Ins. Co.*, 2006 WL 1509157 (Ky. App. 2006). In *Davis*, the UIM carrier notified the injured within thirty days if its intention to retain its subrogation rights and to advance payment of an amount equal to the tortfeasor's policy limit.

6

*Id.* *11. The injured received the check after the thirty-day window.[2] Thereafter, the injured moved for declaratory relief as to his entitlement to execute a full release of the tortfeasor and her insured. In affirming declaratory judgment for the injured, the Court held "that KRS 304.39-320(3) and (4) provide mandatory requirements and 'substantial compliance' is not available as an exception. In addition to the mandatory language, there is a penalty for failure to comply with the 30 day time limit in that the opportunity to preserve subrogation rights is lost." *Id.* at *5. The Court reasoned "[t]he legislature evidently believed that thirty days was a sufficient amount of time to make a decision as to preserving subrogation rights *and to tender payment*." *Id.* (emphasis added). Importantly, with respect to payment within the statutorily proscribed thirty-day window, "the injured party [is] to *receive* the payment, rather than a mere agreement to pay." *Id.* (emphasis added).

The Court finds this interpretation persuasive given the purpose of the Motor Vehicle Reparations Act is "[t]o provide prompt payment to victims of motor vehicle accidents." KRS § 304.39-010. The regulatory scheme is meant "[t]o encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care." *Id.* On the thirtieth day, the injured party either has a check from the tortfeasor's insurer, its UIM carrier, or both. The injured party likely has no preference as to who issues the check just so long as one check is available. If the UIM carrier's check is not present on the thirtieth day, the injured party is within its right to proceed to cash what check *is* present and to move forward with settlement of the claim pursuant to the statute.

---

[2] In *Davis*, it does appear that the UIM carrier communicated its intent to send the check within the thirty-day window. However, the check was both mailed and received after the 30-day period.

The parties cite a number of conflicting cases purporting to interpret whether the statutory language "to pay" requires actual receipt of payment or merely delivery to the U.S. mails. A reasonable argument could be made for either view. Neither seems conclusive. What does seem conclusive is the broad statutory intent which would allow an injured party to accept a check from the negligent party's carrier in the event the UIM carrier has not tendered a similar check within the 30-day window. That is precisely what Brock did here.

The Court concludes that Netherlands did not comply with the statutory mandates set forth in KRS § 304.39-320. Despite it giving Brock timely notice of its intention to retain subrogation rights, the check was one day too late. Under the construct of Kentucky's Motor Vehicle Reparations Act, the most reasonable view is that the language "pay to the injured party" means physical receipt of the payment by the injured party. Although one day may seem trivial, the plain language of the statute and the overall statutory policy supports this result. Defendant Brock is entitled to partial summary judgment on the issue of Netherlands' compliance with the applicable statute.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff Netherlands Insurance Company's motion for summary judgment is DENIED; Defendant George O. Brock's Motion for Partial Summary Judgment is SUSTAINED; and Plaintiff's claim for declaratory relief is DISMISSED WITH PREJUDICE. Defendant's counterclaim remains.

cc:     Counsel of Record